Filed 1/28/26  P. v. Lopez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY LOPEZ,<br><br>    Defendant and Appellant. | B340407<br><br>(Los Angeles County<br>Super. Ct. No. VA158765)<br><br>**REDACTED VERSION OF OPINION**<br><br>Redacted material from confidential record.* (Pen. Code, § 1369.5, subd. (a); Cal. Rules of Court, rules 8.45, 8.46, (f)(1) and (f)(2).) |

_____

    * The record on appeal includes confidential psychological assessment reports regarding Lopez.  In accordance with Penal Code, § 1369.5, subdivision (a) and California Rules of Court, rules 8.45 and 8.46, (f)(1) and (f)(2), we have prepared both a public (redacted) and a sealed (unredacted) version of our opinion.

APPEAL from a judgment of the Superior Court of Los Angeles County, Maria Andrea Davalos, Judge.  Affirmed.

Sanger, Hanley, Sanger & Avila and Sarah S. Sanger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General for Plaintiff and Respondent.

_____

Gregory Lopez challenges the trial court's findings that he was competent to stand trial and competent to be sentenced after the court had previously declared a doubt at each of these stages of the proceedings.  We conclude that substantial evidence supports the trial court's competency findings, and we affirm the judgment.

## PROCEEDINGS

Lopez was arrested in connection with several robberies committed on July 14, 2022.  He was referred to a competency court where he was evaluated and found competent.

On December 14, 2023, counsel declared a doubt as to Lopez's competency.  [REDACTED] The court suspended criminal proceedings and referred Lopez for psychiatric evaluation.

On December 28, 2023, Dr. Rebecca Najera evaluated Lopez [REDACTED]

At a hearing on December 28, 2023, the court found, based upon Dr. Najera's report, that Lopez was competent to stand trial. The court reinstated criminal proceedings.

Lopez waived his right to a jury trial, and a bench trial was held on February 22, 23, and 27, 2024. On February 27, 2024, the court found Lopez guilty of three counts of second degree robbery (Pen. Code,[1] § 211, counts 1, 3 & 5), three counts of assault with a semi-automatic firearm (§ 245, subd. (b), counts 2, 4 & 6), and one count of convicted felon in possession of a firearm (§ 29800, subd. (a)(1), count 7). The court found true the allegation that Lopez had suffered a prior strike conviction (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)). As to counts 1, 3, and 5, the court found true the allegation that Lopez personally used a firearm. The court also found true, as to all eight counts, the aggravating circumstances that the offenses involved acts disclosing a high degree of cruelty, viciousness, and callousness (Cal. Rules of Court, rule 4.421, subd. (a)(1)), that Lopez had suffered numerous prior convictions of increasing seriousness (*Id*., subd. (b)(2)), and that Lopez had served a prior prison term (*Id*., subd. (b)(3)). As to counts 1, 3, and 5, the court found true the aggravating circumstance that Lopez was armed and used a weapon at the time of the offense. (Cal. Rules of Court, rule 4.421, subd. (a)(2).)

Counsel requested that the matter be put over for sentencing to have Lopez psychiatrically evaluated as part of a mitigation package that counsel proposed to provide to the court. The court agreed. On March 25, 2024, Dr. Haig Kojian evaluated

---

[1] All further statutory references are to the Penal Code.

Lopez. In a report dated April 8, 2024, Dr. Kojian stated [REDACTED]

On April 10, 2024, the matter was called for sentencing. Counsel informed the court that Dr. Kojian evaluated Lopez and opined that Lopez was not competent to be sentenced pursuant to section 1368. Counsel represented that Dr. Kojian was unable to conduct Lopez's general mental health evaluation for purposes of the mitigating circumstances package due to Lopez's incompetence. Accordingly, counsel declared a doubt as to Lopez's competency to be sentenced. The court again suspended criminal proceedings.

At a hearing on April 24, 2024, counsel submitted on Dr. Kojian's April 8, 2024 report. The People requested that Dr. Daniel King be appointed to conduct a psychiatric evaluation of Lopez.

In a report dated June 9, 2024, Dr. King opined [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

At a hearing on July 1, 2024, defense counsel asked that Dr. Kojian be appointed to write a report that would explain the discrepancies between his conclusion that Lopez was incompetent and Dr. King's conclusion that Lopez was competent. The trial court agreed.

Dr. Kojian wrote a report dated July 25, 2024, based on his July 12, 2024 interview of Lopez. [REDACTED]

At the hearing on July 30, 2024, defense counsel stated that there had been a significant lapse in time between Dr. Kojian's original evaluation finding Lopez incompetent

4

(March 25, 2024 interview) and his second evaluation finding Lopez competent (July 12, 2024 interview). Dr. King and Dr. Kojian were now in agreement that Lopez was currently competent and could be sentenced. Accordingly, defense counsel believed that Lopez was ready to go back to criminal court. The court made a "weak finding" that Lopez was competent, but emphasized that Lopez needed ongoing psychiatric treatment and that counsel would need to work with Lopez to ensure that he complied with his treatment.

At the sentencing hearing on August 26, 2024, the trial court sentenced Lopez to 20 years eight months in prison.

Lopez timely appealed.

## DISCUSSION

### A. *Legal Principles*

"A defendant is incompetent to stand trial when 'as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a); see *People v. Wycoff* (2021) 12 Cal.5th 58, 81–82.)" (*People v. Parker* (2022) 13 Cal.5th 1, 28 (*Parker*).) "If at any time during a criminal proceeding a doubt arises regarding the defendant's competence to stand trial, the court must hold a competency hearing. (§§ 1368, 1369.)" (*People v. Carr* (2021) 59 Cal.App.5th 1136, 1143.) " 'Penal Code section 1369 sets forth the procedures for the trial in which the question of the mental competence of the defendant is to be determined. It provides that such a trial may be made "by court or jury"

5

[citation]. . . . It also provides for the appointment by the court of one or more experts to examine the defendant [citation], the introduction of evidence by the defendant and the People [citation], and the presentation of argument by each thereafter [citation]. It states that "[i]t shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." ' [Citation.]" (*Ibid*.) "In a hearing to determine competence, the defendant shall be presumed competent to stand trial unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (c)(3); see also *People v. Jackson* (2018) 22 Cal.App.5th 374, 392 (*Jackson*).) "The trial court's 'duty to assess competence is a continuing one.' (*People v. Rodas* (2018) 6 Cal.5th 219, 236, fn. 5.) The obligation to suspend proceedings and hold a competency trial is triggered whenever ' "the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." ' (*People v. Johnson* (2018) 6 Cal.5th 541, 575.)" (*Parker*, *supra*, 13 Cal.5th at p. 28.)

"We review the trial court's findings that [a defendant] was competent to stand trial for support by substantial evidence in the record—that is, for evidence that is reasonable, credible, and

of solid value.  (*People v. Marshall* (1997) 15 Cal.4th 1, 31.)"
(*Jackson*, *supra*, 22 Cal.App.5th at p. 392.)

**B.** *Analysis*

     **1.**     <u>Competency to Stand Trial</u>

Lopez contends that Dr. Najera's report does not provide substantial evidence to support the trial court's finding that he was competent to stand trial.  Lopez argues that Dr. Najera's report is speculative and summarily concludes that he "understands the nature of the criminal proceedings against him and can rationally assist in his defense[,]" but provides no foundation for the doctor's conclusions.  Lopez likens his case to *Jackson*, *supra*, 22 Cal.App.5th 374.  He argues that, like the defendant in *Jackson*, his ability to answer questions about the legal process does not evidence his competency.

*Jackson* is readily distinguishable.  In *Jackson*, the trial court relied on a report based on information obtained about 20 months earlier to find the defendant competent.  (*Jackson*, *supra*, 22 Cal.App.5th at p. 393.)  Over several years, a series of doctors had opined that, because of the developmental nature of the defendant's mental incompetence, there was little to no possibility that the defendant's condition would change and his competency would be restored.  (*Id*. at p. 394.)  One of the defendant's evaluators wrote:  " 'He is unable to name the President and he states that there are "thirty-one and sometimes thirty" months in a year.  He does not know how many days are in a week.  He cannot complete simple addition or subtraction problems . . . .  His memory for distant and recent events is

7

somewhat confused and simplified.  Insight is absent.' " (*Id.* at p. 381.)  Staff at the mental hospital where the defendant was treated ignored this fundamental obstacle and instead "put [the defendant] through drills aimed at teaching him the rudiments of the judicial system.  They wrote that despite his 'innate, biological intellectual ability,' 'he has demonstrated adequate though rudimentary understanding of court processes.'  They noted, however, that 'he requires assistance to effectively weigh options in problem solving and make well-informed decisions.  He responds best to *simplistic, concrete communication* that is *repeated to him numerous times*.'  (Italics added.)  [Staff] . . . point[ed] to the answers [the defendant] was able to give their repeated, simplistic questions about plea bargains, judges, prosecutors, and evidence to show he had attained competency." (*Id.* at pp. 394–395.)

In light of the foregoing, the *Jackson* court concluded that "the basis for [the trial court's] ruling [that the defendant was competent to stand trial] was essentially nil[,]" and reversed the judgment.  (*Jackson, supra*, 22 Cal.App.5th at p. 392.)  The court emphasized that "[e]very single evaluation of [the defendant] in this case concluded he was mildly mentally retarded, had extremely limited intellectual abilities, and had great difficulty grasping and retaining the legal concepts necessary for him to understand his legal circumstances and assist his attorney in his defense.  Even the two reports in which [mental hospital] staff found [the defendant] had 'regained' competency emphasized that he had a limited intellect, learned legal concepts only by rote, and

8

responded accurately only if prompted with simple, targeted questions."  (*Id*. at pp. 392–393.)

In contrast to the report in *Jackson*, here Dr. Najera's report was based on current information.  Dr. Najera interviewed Lopez on the day of the hearing in which the court found Lopez competent to stand trial.  [REDACTED]

[REDACTED] There was no evidence that Lopez was "drilled" on legal process as the defendant in *Jackson* was or that Lopez had to be asked simple, pointed questions multiple times to elicit an appropriate response.

Substantial evidence supports the trial court's finding that Lopez was competent to stand trial.

### 2.     Competency to be Sentenced

Lopez contends that, contrary to our Supreme Court's holding in *People v. Marks* (1988) 45 Cal.3d 1335, 1343, here the trial court failed to "*expressly and unmistakably state on the record, . . . its determination as to whether the defendant is mentally competent to stand trial*."  This is inaccurate.  The trial court stated:  "Based on [Dr. Kojian's second report] and the submissions of counsel, the Court's going to find that—and it's a weak finding, but I'm going to find this person is competent to stand trial."  The trial court's finding was express—the court found Lopez currently competent, but in light of the psychiatric reports the court concluded that Lopez's continued competency

9

depended on Lopez receiving treatment, which counsel would be obligated to ensure occurred.

Lopez argues that there could not be a basis for the court to find him competent because, although Dr. King's report and Dr. Kojian's second report concluded that Lopez was competent, Dr. Kojian's first report concluded that Lopez was not competent. This is tantamount to arguing that Lopez could not be restored to competency. Unlike the defendant in *Jackson*, *supra*, 22 Cal.App.5th 374, here there were no psychiatric evaluations stating that Lopez could not be restored to competency or even that it was unlikely he would be restored to competency. With the exception of Dr. Kojian's April 8, 2024 evaluation, all of the reports in the record concluded that Lopez was competent. In both of his reports, Dr. Kojian opined that Lopez's competency could be restored and/or maintained with appropriate medication.

Dr. Kojian's first interview of Lopez, which led Dr. Kojian to conclude that Lopez was not competent, took place on March 25, 2024. Dr. Kojian's second interview, after which he found Lopez competent, took place on July 12, 2024, nearly four months later. In the interim, Dr. King interviewed Lopez and determined that he was competent on June 6, 2024. [REDACTED] There was sufficient time between Dr. Kojian's first and second evaluations for Lopez to be restored to competency, and the reports demonstrate that this was the case. Lopez's attempt to argue that some of the findings in Dr. King's and Dr. Kojian's reports may have undermined their ultimate conclusions that Lopez was competent is an argument for us to re-evaluate or re-weigh the evidence, rather than determine

whether substantial evidence supports the trial court's findings. That is not our role.

Substantial evidence supports the trial court's determination that Lopez was competent to assist his attorney in his defense in sentencing proceedings.

## DISPOSITION

We affirm the trial court's judgment.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.                    KIM (D.), J.